## In re HANSEN.

### (District Court, D. Oregon. February 12, 1901.)

1. BANKRUPTCY—REVOCATION OF DISCHARGE—GROUNDS.

A voluntary bankrupt some years before the filing of his petition had taken possession of and improved certain land within the limits of a railroad grant, intending to purchase from the railroad company should it acquire the title. The grant was subsequently declared forfeited, and a homestead entry was filed on the land by a third person, which was unsuccessfully contested in the local land office by the bankrupt, and the homestead claimant took possession and seeded the land to crop. While the matter stood in this position the bankrupt filed his petition, and in due course was discharged without objection. Under advice of his attorney, he did not schedule any interest in the land or crop, but the facts were fully stated to his trustee. Some months after his discharge the decision of the local land office was reversed on appeal, and the bankrupt was held entitled, under the forfeiture act and Act Jan. 23, 1896 (29 Stat. 4), to purchase the land from the United States by reason of his prior settlement and improvement. *Held*, that there was no fraud in his failure to schedule the land which would justify a revocation of his discharge; nor did he in fact have any transferable interest therein which could have been made available for the benefit of his creditors.

2. SAME—KNOWLEDGE OF FACTS BY TRUSTEE.

Revocation of a discharge for alleged fraud which is shown to have come to the knowledge of the petitioner since the discharge was granted will not be allowed where the trustee had knowledge of all the facts prior to the discharge, which knowledge is to be deemed that of the creditors whom he represents.

In Bankruptcy. On petition for revocation of bankrupt's discharge.

R. J. Slater, for petitioning creditors.

Stillman & Pierce, for bankrupt.

BELLINGER, District Judge. T. D. and R. L. Oliver, judgment creditors of Lars Hansen, bankrupt, have filed their petition praying

that the order of discharge in this case be revoked and the case reinstated. It is alleged that the petitioning creditors have a judgment rendered in their favor in September, 1897, against the bankrupt for the sum of $661.53; that the bankrupt filed his petition in bankruptcy on the 6th of November, 1899, and was granted his discharge in January, 1900; that at the time he filed his petition in bankruptcy he claimed to be the equitable owner of a certain tract of land in Umatilla county, said equitable title being the right to purchase said land from the government of the United States under an act of congress approved September 29, 1890; that the bankrupt was then in possession of said land under license from the Northern Pacific Railroad Company, and has been ever since the filing of his petition, and is now, in possession of said land, claiming the right to purchase from the government under said act; that in the fall of 1899, while in such possession, and prior to the filing of his petition in bankruptcy, the petitioner was the owner of a crop of wheat upon the land, and was such owner of such crop of wheat at the time of the filing of said petition; that the petitioner failed to list his ownership of said land and said crop in his schedule of assets; that since the filing of his petition and since his discharge he has caused said crop, consisting of about 4,000 bushels of wheat, to be harvested; that the value of such wheat is about $2,000, and the right of the bankrupt in the land was of the value of about $1,000; that all the property mentioned in the bankrupt's schedule has been exhausted in the administration of the estate, and the creditors, including these petitioners, have received no dividends from such estate. The petitioner denies these allegations tending to show fraud on his part, and alleges as an answer to such allegations the following facts: That on about the 27th of March, 1889, he took possession of the tract of land in question for the purpose of establishing a claim to purchase said land from the Northern Pacific Railroad Company, should said railroad company acquire title thereto from the United States; that in April, 1898, one Anti Hannula made homestead entry for said land, and on June 21, 1898, the bankrupt, Hansen, filed his affidavit of contest; that on the 12th day of June, 1899, such contest was decided adversely to the contestant, Hansen, in the office of the register and receiver of the land office at Lagrande, Or. (the land office deciding, in effect, that Hansen had not such a right to the tract in question as would defeat the homestead entry of Hannula), and Hansen's contest was dismissed; that thereupon Hannula, on about the 15th day of June, 1899, took possession of the premises, established his residence thereon, and so continued in the actual occupation and possession of said premises until about the 1st of July, 1900, and was in such possession and occupation at the time Hansen filed his petition in bankruptcy and at the time of the discharge of said bankrupt, all of which facts were well known to the petitioning creditors; that during the fall and winter of 1899 and the winter and spring of 1900 Hannula seeded the land to wheat, and was in the actual control, ownership, and possession thereof until about the 1st day of July, 1900.

Upon the issues thus presented a hearing was had, and the tes-

timony of witnesses heard. It appears that on the 17th day of May, 1900, the commissioner of the general land office reversed the decision of the register and receiver, and decided the contest against Hannula. The latter having appealed, the secretary of the interior sustained the decision of the commissioner, on the 16th of November, 1900. It thus appears that during the time from November 6, 1899, when Hansen filed his petition in bankruptcy, to February 16, 1900, when the order of discharge was entered, Hansen was out of possession of the premises, which were in the occupancy of another claiming a right to the land, and that the decision adverse to Hansen's contest, rendered on the 12th day of the preceding June, was in force, and so continued until the 17th of May following the discharge in bankruptcy. It further appears that Hansen informed his attorney in the bankruptcy proceedings of his relation to the land in question, and took his advice as to including such land in his schedule of assets, and that he was advised that he had no such right or interest in the land as would pass by assignment to his trustee, and as constituted an asset of his estate; that he also gave the trustee in bankruptcy full information in respect to the same matter; so that there was no fraud or concealment on his part in omitting from his schedule any reference to the tract in question, or to his pending contest in respect thereto. The holding in favor of Hansen by the secretary of the interior was not upon the ground that he was a licensee of the railroad company, but that at the date of the forfeiture act, as well as at that of Hannula's entry, the land in question was fenced and under cultivation by Hansen. Under this act, as amended by the act of January 23, 1896 (29 Stat. 4), the fencing, cultivation, or other improvement of lands by claimants entitles them to purchase from the United States. This right of purchase in Hansen was a personal right, and was not transferable. It was therefore not a property which the trustee could take, or of which the creditors have been deprived by the adjudication in bankruptcy.

Moreover, this petition comes too late. It is not claimed that any fraud has been perpetrated by Hansen upon the creditors, or that there has been any concealment by him in the premises. The trustee in bankruptcy represents the creditors. He was fully informed of all the facts in relation to Hansen's right. His information was that of the creditors, by whom he was selected. I am convinced that these creditors, knowing all the facts, believed that Hansen had no right, in view of the adverse decision in the local land office, to this tract of land; and they were willing, while the situation remained as it was, that Hansen should have his discharge in bankruptcy. The reversal of the decision of the local land office by the commissioner and the secretary of the interior accounts for the petition that has been filed. The application to set aside the discharge is denied.